## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In Re:

|  |  |
|---|---|
|  | **Chapter 7** |

**Paul Hansmeier,**

**Bankruptcy No. 15-42460**

        **Debtor.**

---

**Daniel M. McDermott, United States Trustee,**

            **Plaintiff,**                 **Adv. No. 16-04035**

**v.**

**Paul Hansmeier,**

            **Defendant.**

---

## APPLICATION FOR DEFAULT JUDGMENT

---

Daniel M. McDermott, plaintiff, in his capacity as United States Trustee, by and through his undersigned attorney, Colin Kreuziger, hereby applies for a default judgment to be entered against Paul Hansmeier, defendant, on the following grounds:

1.     On March 24, 2016, plaintiff filed a complaint under Fed. R. Bankr. P. 7001(4) seeking denial of the defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(A)-(B), 727(a)(3), 727(a)(4)(A), and 727(a)(5).

2.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.   This proceeding is a core proceeding.

3.     Summons was issued on March 24, 2016, by the United States Bankruptcy Court, District of Minnesota, directing the defendant to file an answer with the Court within thirty days after the date the summons was issued.   (DE #9.)   The plaintiff mailed the complaint and summons to the defendant and his bankruptcy counsel on March 25, 2016.   (*See* Unsworn Decl. of Default, Ex. 1.)

4.      An answer to the complaint was due on April 25, 2016.   *See* Fed. R. Bankr. P. 7012(a).

5.      To date, the defendant has not filed an answer to the complaint.   (*See* Unsworn Decl. of

Default, Ex. 2.)

6.      The plaintiff made the following factual allegations in his verified complaint:

- The defendant is a resident of the State of Minnesota and filed his petition for relief under chapter 13 of the Bankruptcy Code on July 13, 2015.   The court subsequently converted the case to chapter 7 on December 3, 2015.   Randall Seaver was appointed as the chapter 7 trustee.   The case is currently pending in the United States Bankruptcy Court for the District of Minnesota.

- The defendant's wife is Padraigin Browne.   On December 28, 2010, prior to his marriage to Ms. Browne, the defendant created The Mill Trust.   The defendant is the grantor, and Ms. Browne is the trustee.   The contingent beneficiaries of The Mill Trust are the defendant's parents, siblings, future spouse, and any future descendants.   The Mill Trust is irrevocable, and it contains a spendthrift provision. The Mill Trust also directs the trustee to distribute the net income and principal of the Trust Estate to or for the benefit of the beneficiaries.   The defendant retained the right to veto any distribution.   The Mill Trust is funded exclusively by transfers from the defendant and entities that he holds an interest in.

- At approximately the same time as The Mill Trust was created, the defendant incorporated Monyet, LLC.   Monyet is a single-member Delaware limited liability company.   The Mill Trust is the sole member of Monyet.   The defendant is the sole manager of Monyet.   The defendant opened a Scottrade brokerage account for Monyet on December 27, 2010.   The defendant was the sole signatory on the account, and he signed a personal guaranty for the account.

- Beginning in May of 2011, the defendant transferred at least $500,000.00 of his funds or Alpha Law Firm funds to Monyet, LLC.   The defendant owned and controlled Alpha Law Firm.   Between May 2013 and May 2014, the defendant authorized wire transfers totaling $632,139.00 from Monyet's Scottrade account. The wire transfers included the following:

  - July 30, 2013:   $5,000.00 to Ms. Browne, purportedly a "personal transfer."

  - September 27, 2013:   $30,000.00 to Ms. Browne, purportedly a "Trust Agreement."

  - November 22, 2013:   $175,000.00 to Ms. Browne, purportedly a "Trust Transfer."

  - February 7, 2014:   $70,000.00 to Ms. Browne, purportedly a "Trust Transfer."

The funds were transferred to a TCF bank account (account number ending in 3276—"the TCF 3276 account") held in Ms. Browne's name.   Some of the funds were used to pay the defendant's household expenses, including his mortgage payments.   The defendant also made some mortgage payments using funds located in his TCF bank account.

- On December 13, 2013, Ms. Browne withdrew $150,000.00 of the transferred funds from the TCF 3276 account.   She took the cash to her and the defendant's residence and hid the cash in a box in a closet.   Between February and March of 2014, Ms. Browne withdrew an additional $28,000.00 in cash from her bank accounts and similarly hid it.   From time to time, Ms. Browne re-deposited some of the hidden cash into the TCF 3276 account and an Associated Bank account (account number ending in 1853—"the Associated 1853 account").   The defendant had access to the hidden cash.

- The defendant also authorized a wire transfer of $21,250.00 from Monyet's Scottrade account to Robert Balzebre on December 9, 2013, purportedly to repay a loan.   Similarly, he authorized a wire transfer of $39,231.25 from Monyet's Scottrade account to Chisholm Properties South Beach, Inc. on May 5, 2014, purportedly to repay a loan.   The defendant does not have records that document the existence of the loans.

- The defendant also authorized wire transfers totaling $115,000.00 from Monyet's Scottrade account to Class Justice, LLC, between July 26, 2013 and March 19, 2014, purportedly as loans from Monyet's Scottrade account to Class Justice.   The defendant does not have records that document the existence of the loans.

- In the meantime, various courts around the country sanctioned the defendant, including the following:

  o May 6, 2013:   The United States District Court for the Central District of California entered judgment against the defendant and others in the amount of $81,319.72 in favor of John Doe.

  o September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $4,537.50 judgment against the defendant in favor of Godfread Law Firm PC.   Godfread Law Firm assigned the judgment to Best & Flanagan LLP.

  o September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Thompson Hall Santi Cerny & Dooley.   Thompson Hall assigned the judgment to Best & Flanagan LLP.

  o September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Phillip Gainsley.   Gainsley assigned the judgment to Best & Flanagan LLP.

- October 22, 2013:  The United States District Court for the District of Massachusetts entered judgment against the defendant and others in the amount of $64,180.80 in favor of Sandipan Chowdhury.  The district court specifically found that AF Holdings, LLC was an alias of Prenda Law, Inc. and the defendant.

- November 27, 2013 ("the Lightspeed matter"):  The United States District Court for the Southern District of Illinois entered judgment against the defendant and others in the amount of $72,367.00 in favor of Anthony Smith, $119,637.05 in favor of AT&T, and $69,021.26 in favor of ComCast.  The defendant unsuccessfully appealed the district court's order to the Seventh Circuit Court of Appeals.  The defendant made various representations to the district court regarding an alleged inability to pay.  Smith then issued third-party subpoenas to the defendant and others, and later filed a motion for contempt related to obstruction of discovery. The motion was denied.  Later, Smith successfully moved for reconsideration, and the district court held the defendant in contempt, finding that the defendant "had access to the Monyet funds both before and after he pled insolvency to the court."  Thus, the district court imposed additional sanctions on the defendant and others of $65,263.00 on June 5, 2015.  The district court ordered the defendant and others to pay the award of sanctions by July 15, 2015.

- January 20, 2015:  The Fourth Judicial District of the State of Minnesota amended a prior judgment and entered judgment against the defendant in the amount of $63,386.52.  The district court pierced the corporate veil as to Alpha Law Firm and held the defendant jointly and severally liable along with Alpha Law Firm and others.  It specifically found that the defendant had intentionally defunded Alpha Law Firm, disregarded the corporate form, given inconsistent testimony to the district court, and failed to provide responsive information throughout the proceedings.  On June 29, 2015, the district court issued a post-judgment discovery order requiring the defendant to show cause as to why he should not be held in contempt for violating the district court's March 5, 2015 order compelling him to turn over financial records for post-judgment discovery.  The district court gave the defendant until July 14, 2015 to provide financial records.  The Minnesota Court of Appeals affirmed the district court's decision on August 17, 2015.

- In 2014, the defendant provided a financial statement to the United States District Court in the Lightspeed matter.  The financial statement identified judgments against the defendant totaling $576,000.00.

- In the spring of 2014, the defendant and his law partner, John Steele, were embroiled in appellate litigation.  On April 2, 2014, Mr. Steele posted a $287,300.00 supersedeas bond in the Lightspeed matter.  Mr. Hansmeier and Ms. Browne claim to have given Mr. Steele between $60,000.00 and $65,000.00 using a portion of the cash hidden in their residence.  The defendant does not have any financial records that document the transfer of cash to Mr. Steele.

- On June 30 and July 2 of 2014, the defendant testified at a debtor's examination conducted by Best & Flanagan.   At the examinations, he testified that:

  - He had no knowledge of a $75,000.00 transfer from Alpha Law Firm to Monyet on May 3, 2011.

  - Monyet was "simply an account associated with estate planning" and "the reason, I can't tell you how it operates within the whole estate planning scheme is because I did not set up the estate planning myself that's something that's well beyond my expertize [sic]."

  - He did not know where the funds transferred to Monyet were located.

  - He could not get any of the funds transferred to Monyet.

  All of that testimony was false.

- On July 9, 2015, Ms. Browne wrote a $15,305.00 check to the defendant's bankruptcy attorney. The check was written on the Associated 1853 account held in Ms. Browne's name.   On July 9, 2015, Ms. Browne deposited $20,000.00 of the hidden cash into the Associated 1853 account to cover the July 8, 2015 check.   On the date of the bankruptcy filing, Ms. Browne held $7,709.64 of the hidden cash in her Associated 1853 account.

- On or about the date of his bankruptcy filing, the defendant and Ms. Browne counted the amount of cash in their possession that they attributed to Monyet.   The defendant and Ms. Browne had at least $20,900.00 in cash in their possession on the day that the defendant filed his bankruptcy petition.

- On July 13, 2015, the defendant filed a chapter 13 petition, related schedules, and a statement of financial affairs.   On schedule A, he claimed that his residence was worth only $885,000.00.   On schedule B, he failed to disclose any cash on hand, or any tax refunds.   He also disclosed $72,000.00 in accounts receivable.   He also failed to list any cash on the statement of financial affairs.   He did not disclose The Mill Trust anywhere in the schedules or statement of financial affairs.   Although he disclosed the existence of Monyet, he did not disclose any transfers to or from Monyet on the statement of financial affairs.   He also failed to disclose that he was the sole manager of Monyet on the statement of financial affairs.   He disclosed only $8,554.00 in funds held by Monyet.   On schedule I, the defendant claimed that Ms. Browne's net monthly income is $4,889.41.   On schedule J, he claimed total household expenses of $9,779.00 per month.   He did not disclose the alleged $60,000.00 payment to John Steele in the statement of financial affairs.   The defendant claimed in the statement of financial affairs that he had paid his bankruptcy attorney $15,000.00 on July 8, 2015.   He failed to disclose any financial statements made in the prior two years on the statement of financial affairs.   He did not disclose the cash inventory that he and Ms. Browne had undertaken on or about the date of his bankruptcy petition on the statement of financial affairs.

- On schedule F, the defendant listed general unsecured claims of $115,334.78.   Of that total, only a $64,180.00 claim owed to Sandipan Chowdhury was scheduled as disputed.

- On August 10, 2015, Mr. Steele wired $65,000.00 and $47,171.75 to the United States District Court for the Southern District of Illinois in connection with the appellate litigation in the Lightspeed matter.

- Between July 27, 2015 and December 10, 2015, Ms. Browne deposited $20,900.00 of the hidden cash in her Associated 1853 account.

- After the defendant filed his chapter 13 petition, he sold Minnesota Vikings tickets. Ms. Browne deposited the proceeds into her Associated 1853 account.   The defendant never informed the chapter 13 trustee of the ticket sales.

- After the defendant filed his chapter 13 petition, he wrote checks to himself from a bank account held in the name of Class Justice, LLC.   The defendant deposited the checks into an Associated Bank account held jointly by the defendant and Ms. Browne.   The funds were then transferred into Ms. Browne's Associated 1853 account.

- Counsel for the chapter 13 trustee convened the meeting of creditors on August 12, 2015.   At the meeting of creditors, the defendant testified as follows:

  - That the schedules included everything that he owned.

  - That the schedules included all of his creditors.

  - That the schedules accurately represented his income and expenses.

  - That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter.

  - That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

  All of that testimony was false.

- On September 16, 2015, the defendant and Ms. Browne signed a listing agreement with realtor Ben Ganje of Lakes Sotheby's International Realty to sell their Minneapolis condo for $1.3 million.   The defendant and Ms. Browne signed a form directing Mr. Ganje to withhold the property from the Multiple Listing Service.   The defendant did not consult with the chapter 13 trustee before entering into the agreement, file an application to employ Mr. Ganje, or otherwise inform the Court of the listing agreement.

6

- The defendant and Ms. Browne rented and moved to a new residence in Woodbury on or about October 5, 2015.   The lease called for rent payments of $1,950.00 per month.   The defendant did not amend schedule J or update his address with the bankruptcy court.

- The Minneapolis condo was listed for sale for $1.3 million, and the defendant signed a purchase agreement to sell the Minneapolis condo for $1.2 million on November 9, 2015.   The defendant did not inform the chapter 13 trustee, the United States Trustee, or the bankruptcy court of the purchase agreement.   His attorney informed Edward Sheu, counsel for some of the defendant's creditors of the purchase agreement on November 11, 2015.   He did not amend schedule A to reflect the value of the Minneapolis condo.

- On October 28-29, 2015, Edward Sheu examined the defendant and Ms. Browne pursuant to Fed. R. Bankr. P. 2004.   The defendant testified as follows:

  o That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

  o That all of his living expenses were paid using funds in Ms. Browne's personal bank account.

  o That he has no ownership interest, managerial authority, or control over an entity called Disability Support Alliance.

  All of that testimony was false.

- The defendant received $83,000.00 in accounts receivable associated with Disability Support Alliance during the pendency of his chapter 13 case and dissipated the funds without informing the chapter 13 trustee.   On July 21, 2015, the defendant endorsed a $3,000.00 check written to Disability Support Alliance and deposited the funds into an Associated Bank account held jointly in his name and Ms. Browne's name.   He also dissipated the remaining Monyet funds during the pendency of his chapter 13 case without informing the chapter 13 trustee.

- The defendant and Ms. Browne received a 2014 property tax refund of $3,796.00 on October 2, 2015.

- The chapter 7 trustee convened the meeting of creditors on January 21, 2016.   At the meeting of creditors, the defendant testified as follows:

  o That he listed all of his assets on his chapter 13 bankruptcy schedules.

  o That he listed all of his creditors on his chapter 13 bankruptcy schedules.

  o That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

- That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter, and that he did not have money to post the bond.

- That the $150,000.00 withdrawn by Ms. Browne from her TCF account on December 13, 2013 was used for household expenses.

- That he provided truthful testimony at a debtor's examination on June 30, 2014.

- That he provided truthful testimony at a debtor's examination on July 2, 2014.

- That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

All of that testimony was false.

- The following entities are alter egos of the defendant:   The Mill Trust, Monyet, LLC, Alpha Law Firm, Prenda Law, Inc., and Disability Support Alliance.

- The defendant filed a voluntary petition on July 13, 2015.

- The defendant or Alpha Law Firm transferred an unknown amount of funds to The Mill Trust, Monyet, LLC, or Padraigin Browne beginning on December 27, 2010. The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.   The defendant concealed the transfers and the transferred funds until at least one year prior to the filing of his bankruptcy petition.

- The defendant transferred $632,139.00 from Monyet, LLC to third parties beginning on December 27, 2010.   The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.   The defendant concealed the transfers and the transferred funds until at least one year prior to the filing of his bankruptcy petition.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(2)(A).

- The defendant filed a voluntary petition on July 13, 2015.

- After the filing of his petition, the defendant received $83,000.00 in accounts receivable owed to him as of the date of the filing of his petition.    The defendant transferred the funds to various third parties.    The funds were property of the bankruptcy estate.   The defendant concealed the transferred funds from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of

his bankruptcy petition.

- After the filing of his petition, the defendant concealed approximately $20,900.00 in cash.   The cash was property of the bankruptcy estate.   The defendant concealed the cash from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of his bankruptcy petition.

- After the filing of his petition, the defendant concealed the true value of his Minneapolis condo from the chapter 13 trustee.   The defendant's interest in the Minneapolis condo was property of the bankruptcy estate.   The defendant concealed the value of his Minneapolis condo with the intent to hinder, delay, or defraud the chapter 13 trustee.

- After the filing of his petition, the defendant sold Minnesota Vikings tickets.   The proceeds of the ticket sales were property of the bankruptcy estate.   The defendant concealed the sales proceeds with the intent to hinder, delay, or defraud the chapter 13 trustee.

- After the filing of his petition, the defendant concealed his 2014 property tax refund from the chapter 13 trustee and the chapter 7 trustee.   The property tax refund was property of the bankruptcy estate.   The defendant concealed his 2014 property tax refund with the intent to hinder, delay, or defraud the chapter 13 trustee.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(2)(B).

- The defendant failed to keep or preserve recorded information from which his financial condition and business transactions might be ascertained.   Specifically, the defendant failed to keep records that identify the amount of accounts receivable that he collected after he filed his petition, and the disposition of those accounts receivable.   The defendant also failed to keep records evidencing the transfer of $60,000.00 in cash to Mr. Steele in the spring of 2014.   The defendant also kept no records to document the existence of loans made to Class Justice, LLC, or the loans that were allegedly repaid to Mr. Balzebre and Chisholm Properties South Beach.

- The defendant's failure to keep or preserve the records is not justified under all of the circumstances of this case.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(3).

- The defendant knowingly and fraudulently made the following false oaths on documents that he filed with the bankruptcy court:

    o The defendant assigned a value of $885,000.00 to the Minneapolis condo on schedule A.

9

- o The defendant failed to disclose The Mill Trust on schedule B or the statement of financial affairs.

- o The defendant claimed that Monyet, LLC had only $8,554.00 on schedule B and on the statement of financial affairs.

- o The defendant claimed that he had no cash on hand on schedule B.

- o The defendant failed to disclose a 2014 property tax refund of $3,796,00 on schedule B.

- o The defendant claimed that his monthly expenses on schedule J were $9,779.00.

- o The defendant failed to disclose the $60,000.00 payment to John Steele in the spring of 2014 on the statement of financial affairs.

- o The defendant stated that he made payment of $15,000.00 to Barbara May on July 8, 2015 in the statement of financial affairs.

- o The defendant failed to disclose any property transferred to either The Mill Trust or Monyet, LLC within the ten years prior to filing his petition on the statement of financial affairs.

- o The defendant failed to disclose any property transferred from Monyet, LLC within the two years prior to filing his petition on the statement of financial affairs.

- o The defendant failed to disclose that he was the sole manager of Monyet, LLC on the statement of financial affairs.

- o The defendant failed to disclose a financial statement that he provided in the Lightspeed case on the statement of financial affairs.

- o The defendant failed to disclose an inventory of cash in his home that he took on or about the date of filing of his chapter 13 petition on the statement of financial affairs.

- The defendant knowingly and fraudulently made the following false oaths when he testified at the meeting of creditors on August 12, 2015:

  - o That the schedules included everything that he owned.

  - o That the schedules included all of his creditors.

  - o That the schedules accurately represented his income and expenses.

  - o That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited with the United States District Court for the Southern District of

Illinois in connection with the Lightspeed matter.

- o That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

- The defendant knowingly and fraudulently made the following false oaths when he testified at a Rule 2004 examination held on October 28-29, 2015:

  - o That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

  - o That all of his living expenses were paid using funds in Ms. Browne's personal bank account.

  - o That he has no ownership interest, managerial authority, or control over Disability Support Alliance.

- The defendant knowingly and fraudulently made the following false oaths when he testified at the meeting of creditors on January 21, 2016:

  - o That he listed all of his assets on his chapter 13 bankruptcy schedules.

  - o That he listed all of his creditors on his chapter 13 bankruptcy schedules.

  - o That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

  - o That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter, and that he did not have money to post the bond.

  - o That the $150,000.00 withdrawn by Ms. Browne from her TCF account on December 13, 2013 was used for household expenses.

  - o That he provided truthful testimony at a debtor's examination on June 30, 2014.

  - o That he provided truthful testimony at a debtor's examination on July 2, 2014.

  - o That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

- The defendant's false oaths set forth above were material omissions regarding the defendant's property and property of the estate.

- As a result of the defendant's false oaths, the plaintiff is entitled to an order denying

the defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

- The defendant and Ms. Browne had $178,000.00 in cash in their possession in 2014.   The defendant's schedule B indicates that he was not in possession of any cash when he filed his petition.

- The defendant has not provided a satisfactory explanation for the disposition or loss of the $178,000.00.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(5).

WHEREFORE, the plaintiff requests that the Court enter an order denying the defendant's

discharge.


Dated: April 26, 2016                                    DANIEL M. MCDERMOTT
                                                         UNITED STATES TRUSTEE
                                                         REGION 12

                                                         /e/ Colin Kreuziger
                                                         Colin Kreuziger
                                                         Trial Attorney
                                                         MN Atty No. 0386834
                                                         Office of U.S. Trustee
                                                         1015 U.S. Courthouse
                                                         300 South Fourth Street
                                                         Minneapolis, MN 55415
                                                         (612) 334-1350

## VERIFICATION

I, Colin Kreuziger, a trial attorney for the United States Trustee, the Plaintiff herein, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information, and belief.

Executed on April 26, 2016

/e/ Colin Kreuziger
Colin Kreuziger
Trial Attorney
MN Atty No. 0386834
Office of U.S. Trustee
1015 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 334-1350

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MINNESOTA

In Re:

|                                   |                          |
|-----------------------------------|--------------------------|
|                                   | **Chapter 7**            |
| **Paul Hansmeier,**               |                          |
|                                   | **Bankruptcy No. 15-42460** |
| **Debtor.**                       |                          |

**Daniel M. McDermott, United States Trustee,**

|                          |                     |
|--------------------------|---------------------|
| **Plaintiff,**           | **Adv. No. 16-04035** |
| **v.**                   |                     |
| **Paul Hansmeier,**      |                     |
| **Defendant.**           |                     |

### UNSWORN DECLARATION OF DEFAULT

I, Colin Kreuziger, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am employed as a trial attorney for the United States Department of Justice.

2. I am the attorney of record for the plaintiff in the above-entitled adversary proceeding.

3. The plaintiff mailed the complaint and summons to the defendant and his bankruptcy counsel on March 25, 2016.   (*See* Ex. 1.)

4. The plaintiff has not been served with an answer by the defendant.   A CM/ECF docket report generated on April 26, 2016, shows that no answer was docketed by the court within the time prescribed by the bankruptcy rules.   (*See* Ex. 2.)

This concludes my Declaration.

Dated:   April 26, 2016                                  /e/ Colin Kreuziger
                                                          Colin Kreuziger
                                                          Trial Attorney

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In re:                                                    BK 15-42460

**Paul Hansmeier**

                                                          **Chapter 7**

                        **Debtor(s)**

---

**Daniel M. McDermott, United States Trustee**

                        **Plaintiff,**
vs.                                                       **Adv. No. 16-04035**

**Paul Hansmeier**

                        **Defendant(s).**

---

## UNSWORN CERTIFICATE OF SERVICE

---

The undersigned hereby certifies under penalty of perjury that she is an employee in the

Office of the United States Trustee for the District of Minnesota and is a person of such age and

discretion as to be competent to serve papers.

That on March 25, 2016, she served a copy of the United States Trustee's **Summons and

Complaint for Denial of Discharge** in the above-referenced case by placing said copy in a

postpaid envelope addressed to the person(s) hereinafter named, at the place and address stated

below, which is the last known address, and by depositing said envelope and contents in the

United States Mail at Minneapolis, Minnesota.

**Addressee(s):**

**UST Ex. 1**

Paul Hansmeier
100 3rd Ave S, Suite 3201
Minneapolis, MN 55401

Paul Hansmeier
3749 Sundbury Alcove
Woodbury, MN 55125

Barbara J. May
2780 Snelling Ave N, Suite 102
Roseville, MN 55113

  /e/Audrey Williams
**Office of the United States Trustee**
**Audrey Williams**

**727OBJ**

# US Bankruptcy Court
## District of Minnesota (Minneapolis)
### Adversary Proceeding #: 16-04035

*Assigned to:* Judge Kathleen H Sanberg                    *Date Filed:* 03/24/16
*Lead BK Case:* 15-42460
*Lead BK Title:* PAUL HANSMEIER
*Lead BK Chapter:* 7
*Demand:*

*Nature[s] of Suit:*  41 Objection / revocation of discharge - 727(c),(d),(e)

### *Plaintiff*
-----------------------
**Daniel M McDermott**                         represented by **Colin Kreuziger**
United States Trustee                                          US Trustee Office
1015 US Courthouse                                            1015 U S Courthouse
300 S 4th St                                                      300 S 4th St
Minneapolis, MN 55415                                    Minneapolis, MN 55415
                                                                      612-334-1350
                                                                      Email: Colin.Kreuziger@usdoj.gov
                                                                      *LEAD ATTORNEY*


V.

### *Defendant*
-----------------------
**PAUL HANSMEIER**
100 3RD AVE S
SUITE 3201
MPLS, MN 55401
SSN / ITIN: xxx-xx-5754

| Filing Date | # | Docket Text |
|-------------|---|-------------|
| 03/24/2016 | 1 (18 pgs) | Adversary case 16-04035. (41 (Objection / revocation of discharge - 727(c),(d),(e))), Complaint without demand for jury trial by Daniel M McDermott against PAUL HANSMEIER. No Fee. (Kreuziger-AW, Colin) (Entered: 03/24/2016) |
| 03/24/2016 | | |

**UST Ex. 2**

| | | |
|---|---|---|
| | 2 (1 pg) | Summons issued on PAUL HANSMEIER Date Issued 3/24/2016, Answer Due 4/25/2016 (Carrie MNBM) (Entered: 03/24/2016) |
| 03/24/2016 | 3 (1 pg) | Pro bono notice to defendants re: 1 Complaint. (Carrie MNBM) (Entered: 03/24/2016) |
| 03/25/2016 | 4 (2 pgs) | Certificate of service (re:1 Complaint, 2 Summons for adversary proceeding) filed by Daniel M McDermott. (Williams, Audrey) (Entered: 03/25/2016) |
| 03/26/2016 | 5 (2 pgs) | BNC Certificate of Mailing. Notice Date 03/26/2016. (Admin.) (Entered: 03/26/2016) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 04/26/2016 09:24:19 | | |
| **PACER Login:** | ckreuziger:3520546:4299065 | **Client Code:** DOJ |
| **Description:** | Docket Report | **Search Criteria:** 16-04035 Fil or Ent: filed Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 1 | **Cost:** 0.10 |

**UST Ex. 2**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

                                         **Chapter 7**

**Paul Hansmeier,**

                                         **Bankruptcy No. 15-42460**

        **Debtor.**

---

**Daniel M. McDermott, United States Trustee,**

                      **Plaintiff,**                    **Adv. No. 16-04035**

**v.**

**Paul Hansmeier,**

                      **Defendant.**

---

## UNSWORN DECLARATION OF IDENTIFICATION

---

I, Colin Kreuziger, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1. I am employed as a trial attorney for the United States Department of Justice.

2. I am the attorney of record for the plaintiff in the above-entitled adversary case.

3. The name and address of the defendant in the above-entitled matter is listed on record as:   Paul Hansmeier, 100 3rd Ave S, Suite 3201, Mpls, MN 55401.   (See Unsworn Decl. of Default, Ex. 2.)

4. Original schedules I and J indicate that the defendant is married with two minor children.   (See Ex. A.)

5. According to the attached schedule, the defendant is not an infant and is not employed by a military organization.

6. No assertion of incompetence or military service has been asserted in the

bankruptcy case or to the United States Trustee in response to this complaint.

7.    Based on the foregoing, I am of the belief that the defendant is competent.


Dated:   April 26, 2016                              /e/ Colin Kreuziger
                                                     Colin Kreuziger
                                                     Trial Attorney

2

**Fill in this information to identify your case:**

| | | |
|---|---|---|
| Debtor 1 | **PAUL** | **HANSMEIER** |
| | First Name     Middle Name | Last Name |
| Debtor 2 (Spouse, if filing) | | |
| | First Name     Middle Name | Last Name |
| United States Bankruptcy Court for the: | **DISTRICT OF MINNESOTA** | |
| Case number (if known) | | |

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition chapter 13 income as of the following date:

_____
MM / DD / YYYY

Official Form B 6I

# Schedule I: Your Income

12/13

Be as complete and accurate as possible. If two married people are filing together (Debtor 1 and Debtor 2), both are equally responsible for supplying correct information. If you are married and not filing jointly, and your spouse is living with you, include information about your spouse. If you are separated and your spouse is not filing with you, do not include information about your spouse. If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write your name and case number (if known). Answer every question.

## Part 1:   Describe Employment

**1. Fill in your employment information.**

If you have more than one job, attach a separate page with information about additional employers.

Include part-time, seasonal, or self-employed work.

Occupation may include student or homemaker, if it applies.

| | Debtor 1 | Debtor 2 or non-filing spouse |
|---|---|---|
| **Employment status** | ☑ Employed<br>☐ Not employed | ☑ Employed<br>☐ Not employed |
| **Occupation** | **ATTORNEY** | **ATTORNEY** |
| **Employer's name** | **CLASS JUSTICE, PLLC** | **SHUMAKER AND SIEFFERT, PA** |
| **Employer's address** | Number   Street | Number   Street |
| | City          State   Zip Code | City          State   Zip Code |
| **How long employed there?** | | |

## Part 2:   Give Details About Monthly Income

**Estimate monthly income as of the date you file this form.** If you have nothing to report for any line, write $0 in the space. Include your non-filing spouse unless you are separated.

If you or your non-filing spouse have more than one employer, combine the information for all employers for that person on the lines below. If you need more space, attach a separate sheet to this form.

| | | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| **2.** | List monthly gross wages, salary, and commissions (before all payroll deductions). If not paid monthly, calculate what the monthly wage would be. | 2.    **$0.00** | **$10,376.16** |
| **3.** | Estimate and list monthly overtime pay. | 3.  + **$0.00** | **$0.00** |
| **4.** | Calculate gross income. Add line 2 + line 3. | 4.    **$0.00** | **$10,376.16** |

Official Form B 6I                              Schedule I: Your Income                              page 1

**UST Ex. A**

Debtor 1 **PAUL** _____ **HANSMEIER** _____ _____
  First Name      Middle Name        Last Name        Case number (if known)

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| | Copy line 4 here .............................................................➔ 4. | **$0.00** | **$10,376.16** |
| **5.** | **List all payroll deductions:** | | |
| **5a.** | **Tax, Medicare, and Social Security deductions** 5a. | **$0.00** | **$2,845.87** |
| **5b.** | **Mandatory contributions for retirement plans** 5b. | **$0.00** | **$0.00** |
| **5c.** | **Voluntary contributions for retirement plans** 5c. | **$0.00** | **$1,037.62** |
| **5d.** | **Required repayments of retirement fund loans** 5d. | **$0.00** | **$0.00** |
| **5e.** | **Insurance** 5e. | **$0.00** | **$745.49** |
| **5f.** | **Domestic support obligations** 5f. | **$0.00** | **$0.00** |
| **5g.** | **Union dues** 5g. | **$0.00** | **$0.00** |
| **5h.** | **Other deductions.** Specify:  **See continuation sheet** 5h.+ | **$0.00** | **$847.77** |
| **6.** | **Add the payroll deductions.**    Add lines 5a + 5b + 5c + 5d + 5e + 5f + 5g + 5h. 6. | **$0.00** | **$5,476.75** |
| **7.** | **Calculate total monthly take-home pay.**    Subtract line 6 from line 4. 7. | **$0.00** | **$4,899.41** |
| **8.** | **List all other income regularly received:** | | |
| **8a.** | **Net income from rental property and from operating a business, profession, or farm** 8a. | **$7,570.00** | **$0.00** |
| | Attach a statement for each property and business showing gross receipts, ordinary and necessary business expenses, and the total monthly net income. | | |
| **8b.** | **Interest and dividends** 8b. | **$0.00** | **$0.00** |
| **8c.** | **Family support payments that you, a non-filing spouse, or a dependent regularly receive** 8c. | **$0.00** | **$0.00** |
| | Include alimony, spousal support, child support, maintenance, divorce settlement, and property settlement. | | |
| **8d.** | **Unemployment compensation** 8d. | **$0.00** | **$0.00** |
| **8e.** | **Social Security** 8e. | **$0.00** | **$0.00** |
| **8f.** | **Other government assistance that you regularly receive** | | |
| | Include cash assistance and the value (if known) of any non-cash assistance that you receive, such as food stamps (benefits under the Supplemental Nutrition Assistance Program) or housing subsidies. Specify: _____ 8f. | **$0.00** | **$0.00** |
| **8g.** | **Pension or retirement income** 8g. | **$0.00** | **$0.00** |
| **8h.** | **Other monthly income.** Specify: _____ 8h.+ | **$0.00** | **$0.00** |
| **9.** | **Add all other income.**  Add lines 8a + 8b + 8c + 8d + 8e + 8f + 8g + 8h. 9. | **$7,570.00** | **$0.00** |
| **10.** | **Calculate monthly income.**  Add line 7 + line 9. 10. Add the entries in line 10 for Debtor 1 and Debtor 2 or non-filing spouse. | **$7,570.00** + **$4,899.41** = | **$12,469.41** |

**11. State all other regular contributions to the expenses that you list in Schedule J.**
Include contributions from an unmarried partner, members of your household, your dependents, your roommates, and other friends or relatives.

Do not include any amounts already included in lines 2-10 or amounts that are not available to pay expenses listed in Schedule J.

Specify: _____  11. + **$0.00**

**12. Add the amount in the last column of line 10 to the amount in line 11.** The result is the combined monthly income. Write that amount on the Summary of Schedules and Statistical Summary of Certain Liabilities and Related Data, if it applies.

12.  **$12,469.41**
**Combined monthly income**

**13. Do you expect an increase or decrease within the year after you file this form?**

☐ No.

☑ Yes. Explain:  **DEBTOR'S WIFE HAS RECENTLY RETURNED TO WORK AFTER MATERNITY LEAVE.**

**UST Ex. A**

Debtor 1   **PAUL**                                    **HANSMEIER**                              Case number (if known) _____
           First Name        Middle Name              Last Name

|  |  | For Debtor 1 | For Debtor 2 or non-filing spouse |
|---|---|---|---|
| **5h.** | **Other Payroll Deductions (details)** | | |
|  | FSA | $0.00 | $454.54 |
|  | HSA | $0.00 | $300.00 |
|  | DENTAL | $0.00 | $93.23 |
|  | Totals: | $0.00 | $847.77 |

Debtor 1   **PAUL**                              **HANSMEIER**                    Case number (if known) _____
           First Name        Middle Name          Last Name

8a.  Attached Statement (Debtor 1)

### CLASS JUSTICE,  LLC

**Gross Monthly Income:**                                                                    $21,500.00

| Expense | Category | Amount |
|---|---|---|
| RENT | Rent | **$2,173.00** |
| ADVERTISING | advertising | **$300.00** |
| CONTRACT LABOR | CONTRACT LABOR | **$1,800.00** |
| LEGAL AND PROFESSIONAL SERVICES | LEGAL AND PROFESSIONAL | **$1,900.00** |
| OFFICE EQUIPMENT | Office Equipment | **$75.00** |
| GAS | Gas | **$140.00** |
| DEDUCTIBLE MEALS AND ENT | DEDUCTIBLE MEALS AND ENT | **$210.00** |
| PROFESSIONAL LICENSE AND CLE | License AND CLE | **$150.00** |
| PROFESSIONAL PERIODICALS | Professional PERIODICALS | **$30.00** |
| INSURANCE | insurance | **$250.00** |
| PAYROLL | PAYROLL | **$3,427.00** |
| UTILTIES | Utilities | **$435.00** |
| FILING FEES | FILING FEES | **$2,640.00** |
| OFFICE EXPENSES AND SUPPLIES | Office Supplies | **$400.00** |

**Total Monthly Expenses**                                                                   $13,930.00

**Net Monthly Income:**                                                                       $7,570.00

Official Form B 6I                     **Schedule I: Your Income**                          page 4
                                       **UST Ex. A**

**Fill in this information to identify your case:**

| Debtor 1 | **PAUL** | | **HANSMEIER** |
|---|---|---|---|
| | First Name | Middle Name | Last Name |

Debtor 2
(Spouse, if filing)

First Name     Middle Name     Last Name

United States Bankruptcy Court for the:   **DISTRICT OF MINNESOTA**

Case number
(if known)

Check if this is:

☐ An amended filing

☐ A supplement showing post-petition
chapter 13 expenses as of the
following date:

_____
MM / DD / YYYY

☐ A separate filing for Debtor 2 because
Debtor 2 maintains a separate household

Official Form B 6J

# Schedule J: Your Expenses                    12/13

Be as complete and accurate as possible. If two married people are filing together, both are equally responsible for supplying
correct information. If more space is needed, attach another sheet to this form. On the top of any additional pages, write your
name and case number (if known). Answer every question.

## Part 1:   Describe Your Household

1. **Is this a joint case?**

   ☒ No. Go to line 2.
   ☐ Yes. **Does Debtor 2 live in a separate household?**
       ☐ No
       ☐ Yes. Debtor 2 must file a separate Schedule J.

2. **Do you have dependents?**

   Do not list Debtor 1 and
   Debtor 2.

   Do not state the
   dependents' names.

   ☐ No
   ☒ Yes. Fill out this information
   for each dependent...................

   | Dependent's relationship to Debtor 1 or Debtor 2 | Dependent's age | Does dependent live with you? |
   |---|---|---|
   | **SON** | 3 | ☐ No ☒ Yes |
   | **DAUGHTER** | 1 | ☐ No ☒ Yes |
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |
   | | | ☐ No ☐ Yes |

3. **Do your expenses include
   expenses of people other than
   yourself and your dependents?**

   ☒ No
   ☐ Yes

## Part 2:   Estimate Your Ongoing Monthly Expenses

Estimate your expenses as of your bankruptcy filing date unless you are using this form as a supplement in a Chapter 13 case
to report expenses as of a date after the bankruptcy is filed. If this is a supplemental Schedule J, check the box at the top of
the form and fill in the applicable date.

Include expenses paid for with non-cash government assistance if you know the value of
such assistance and have included it on Schedule I: Your Income (Official Form B 6I.)

Your expenses

| | | |
|---|---|---|
| 4. | The rental or home ownership expenses for your residence.<br>Include first mortgage payments and any rent for the ground or lot. | 4.    **$4,359.00** |
| | **If not included in line 4:** | |
| 4a. | Real estate taxes | 4a. _____ |
| 4b. | Property, homeowner's, or renter's insurance | 4b. _____ |
| 4c. | Home maintenance, repair, and upkeep expenses | 4c. _____ |
| 4d. | Homeowner's association or condominium dues | 4d.    **$900.00** |

**UST Ex. A**

Debtor 1    **PAUL**                                    **HANSMEIER**                    Case number (if known) _____

      First Name        Middle Name                Last Name

 

**Your expenses**

| | | |
|---|---|---|
| 5. **Additional mortgage payments for your residence,** such as home equity loans | 5. | _____ |
| 6. **Utilities:** | | |
| 6a.  Electricity, heat, natural gas | 6a. | _____ |
| 6b.  Water, sewer, garbage collection | 6b. | _____ |
| 6c.  Telephone, cell phone, Internet, satellite, and cable services | 6c. | _____ |
| 6d.  Other.  Specify:  **CELL** | 6d. | **$150.00** |
| 7. **Food and housekeeping supplies** | 7. | **$850.00** |
| 8. **Childcare and children's education costs** | 8. | **$1,200.00** |
| 9. **Clothing, laundry, and dry cleaning** | 9. | **$400.00** |
| 10. **Personal care products and services** | 10. | **$115.00** |
| 11. **Medical and dental expenses** | 11. | _____ |
| 12. **Transportation.**  Include gas, maintenance, bus or train fare.  Do not include car payments. | 12. | **$200.00** |
| 13. **Entertainment, clubs, recreation, newspapers, magazines, and books** | 13. | **$125.00** |
| 14. **Charitable contributions and religious donations** | 14. | _____ |
| 15. **Insurance.** Do not include insurance deducted from your pay or included in lines 4 or 20. | | |
| 15a.  Life insurance | 15a. | **$200.00** |
| 15b.  Health insurance | 15b. | _____ |
| 15c.  Vehicle insurance | 15c. | **$175.00** |
| 15d.  Other insurance.  Specify: _____ | 15d. | _____ |
| 16. **Taxes.**   Do not include taxes deducted from your pay or included in lines 4 or 20. Specify: _____ | 16. | _____ |
| 17. **Installment or lease payments:** | | |
| 17a.  Car payments for Vehicle 1   **WIFE'S CAR PAYMENT** | 17a. | **$780.00** |
| 17b.  Car payments for Vehicle 2 | 17b. | _____ |
| 17c.  Other.  Specify: _____ | 17c. | _____ |
| 17d.  Other.  Specify: _____ | 17d. | _____ |
| 18. **Your payments of alimony, maintenance, and support that you did not report as deducted from your pay on line 5, Schedule I, Your Income (Official Form B 6I).** | 18. | _____ |
| 19. **Other payments you make to support others who do not live with you.** Specify: _____ | 19. | _____ |
| 20. **Other real property expenses not included in lines 4 or 5 of this form or on Schedule I: Your Income.** | | |
| 20a.  Mortgages on other property | 20a. | _____ |
| 20b.  Real estate taxes | 20b. | _____ |
| 20c.  Property, homeowner's, or renter's insurance | 20c. | _____ |
| 20d.  Maintenance, repair, and upkeep expenses | 20d. | _____ |
| 20e.  Homeowner's association or condominium dues | 20e. | _____ |

**UST Ex. A**

Debtor 1 __PAUL_____ __HANSMEIER_____ Case number (if known) _____
     First Name         Middle Name       Last Name

| | | | |
|---|---|---|---|
| **21.** | **Other.**  Specify:  <u>See continuation sheet</u> | 21. | + $325.00 |
| **22.** | **Your monthly expenses.**  Add lines 4 through 21. The result is your monthly expenses. | 22. | $9,779.00 |
| **23.** | **Calculate your monthly net income.** | | |
| | 23a.  Copy line 12 (your combined monthly income) from Schedule I. | 23a. | $12,469.41 |
| | 23b.  Copy your monthly expenses from line 22 above. | 23b. | − $9,779.00 |
| | 23c.  Subtract your monthly expenses from your monthly income. The result is your monthly net income. | 23c. | $2,690.41 |

**24.  Do you expect an increase or decrease in your expenses within the year after you file this form?**

For example, do you expect to finish paying for your car loan within the year or do you expect your mortgage payment to increase or decrease because of a modification to the terms of your mortgage?

☐ No.
☑ Yes.  | Explain here: **DEBTOR'S WIFE'S FSA PAYS A PORTION OF THEIR 42000.00 A MONTH DAYCARE** |

**UST Ex. A**

Debtor 1    **PAUL**                                              **HANSMEIER**                        Case number (if known) _____
            First Name          Middle Name          Last Name

21.  **Other.  Specify:**

   **GLASSES/CONTACTS**                                                                    **$30.00**

   **GROOMING**                                                                            **$80.00**

   **POSTAGE**                                                                              **$5.00**

   **TABS AND PLATES**                                                                     **$60.00**

   **DIAPERS AND FORMULA**                                                                **$150.00**

                                                          **Total:**        | **$325.00** |

**UST Ex. A**

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

**Chapter 7**

**Paul Hansmeier,**

**Bankruptcy No. 15-42460**

   **Debtor.**

---

**Daniel M. McDermott, United States Trustee,**

      **Plaintiff,**      **Adv. No. 16-04035**

**v.**

**Paul Hansmeier,**

      **Defendant.**

---

### UNSWORN DECLARATION ON THE MERITS AND AMOUNT DUE

---

  I, Colin Kreuziger, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.  I am a trial attorney for the United States Department of Justice.

2.  I am the attorney of record for the plaintiff in the above-entitled case.

3.  A monetary judgment has not been requested in this adversary proceeding.

4.  The plaintiff has a legal basis upon which to request such relief pursuant to the authority of 28 U.S.C. § 586(a) and 11 U.S.C. § 727(a)(2)(A)-(B), 727(a)(3), 727(a)(4)(A), and 727(a)(5)

5.  Said relief is supported by the following facts as stated in the verified complaint:

- The defendant is a resident of the State of Minnesota and filed his petition for relief under chapter 13 of the Bankruptcy Code on July 13, 2015.   The court subsequently converted the case to chapter 7 on December 3, 2015.   Randall Seaver was appointed as the chapter 7 trustee.   The case is currently pending in the United States Bankruptcy Court for the District of Minnesota.

- The defendant's wife is Padraigin Browne.   On December 28, 2010, prior to his marriage to Ms. Browne, the defendant created The Mill Trust.   The defendant is the grantor, and Ms. Browne is the trustee.   The contingent beneficiaries of The Mill Trust are the defendant's parents, siblings, future spouse, and any future descendants.   The Mill Trust is irrevocable, and it contains a spendthrift provision. The Mill Trust also directs the trustee to distribute the net income and principal of the Trust Estate to or for the benefit of the beneficiaries.   The defendant retained the right to veto any distribution.   The Mill Trust is funded exclusively by transfers from the defendant and entities that he holds an interest in.

- At approximately the same time as The Mill Trust was created, the defendant incorporated Monyet, LLC.   Monyet is a single-member Delaware limited liability company.   The Mill Trust is the sole member of Monyet.   The defendant is the sole manager of Monyet.   The defendant opened a Scottrade brokerage account for Monyet on December 27, 2010.   The defendant was the sole signatory on the account, and he signed a personal guaranty for the account.

- Beginning in May of 2011, the defendant transferred at least $500,000.00 of his funds or Alpha Law Firm funds to Monyet, LLC.   The defendant owned and controlled Alpha Law Firm.   Between May 2013 and May 2014, the defendant authorized wire transfers totaling $632,139.00 from Monyet's Scottrade account. The wire transfers included the following:

  o July 30, 2013:   $5,000.00 to Ms. Browne, purportedly a "personal transfer."

  o September 27, 2013:   $30,000.00 to Ms. Browne, purportedly a "Trust Agreement."

  o November 22, 2013:   $175,000.00 to Ms. Browne, purportedly a "Trust Transfer."

  o February 7, 2014:   $70,000.00 to Ms. Browne, purportedly a "Trust Transfer."

  The funds were transferred to a TCF bank account (account number ending in 3276—"the TCF 3276 account") held in Ms. Browne's name.   Some of the funds were used to pay the defendant's household expenses, including his mortgage payments.   The defendant also made some mortgage payments using funds located in his TCF bank account.

- On December 13, 2013, Ms. Browne withdrew $150,000.00 of the transferred funds from the TCF 3276 account.   She took the cash to her and the defendant's residence and hid the cash in a box in a closet.   Between February and March of 2014, Ms. Browne withdrew an additional $28,000.00 in cash from her bank accounts and similarly hid it.   From time to time, Ms. Browne re-deposited some of the hidden cash into the TCF 3276 account and an Associated Bank account (account number ending in 1853—"the Associated 1853 account").   The

defendant had access to the hidden cash.

- The defendant also authorized a wire transfer of $21,250.00 from Monyet's Scottrade account to Robert Balzebre on December 9, 2013, purportedly to repay a loan.   Similarly, he authorized a wire transfer of $39,231.25 from Monyet's Scottrade account to Chisholm Properties South Beach, Inc. on May 5, 2014, purportedly to repay a loan.   The defendant does not have records that document the existence of the loans.

- The defendant also authorized wire transfers totaling $115,000.00 from Monyet's Scottrade account to Class Justice, LLC, between July 26, 2013 and March 19, 2014, purportedly as loans from Monyet's Scottrade account to Class Justice.   The defendant does not have records that document the existence of the loans.

- In the meantime, various courts around the country sanctioned the defendant, including the following:

  o May 6, 2013:   The United States District Court for the Central District of California entered judgment against the defendant and others in the amount of $81,319.72 in favor of John Doe.

  o September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $4,537.50 judgment against the defendant in favor of Godfread Law Firm PC.   Godfread Law Firm assigned the judgment to Best & Flanagan LLP.

  o September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Thompson Hall Santi Cerny & Dooley.   Thompson Hall assigned the judgment to Best & Flanagan LLP.

  o September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Phillip Gainsley.   Gainsley assigned the judgment to Best & Flanagan LLP.

  o October 22, 2013:   The United States District Court for the District of Massachusetts entered judgment against the defendant and others in the amount of $64,180.80 in favor of Sandipan Chowdhury.   The district court specifically found that AF Holdings, LLC was an alias of Prenda Law, Inc. and the defendant.

  o November 27, 2013 ("the Lightspeed matter"):   The United States District Court for the Southern District of Illinois entered judgment against the defendant and others in the amount of $72,367.00 in favor of Anthony Smith, $119,637.05 in favor of AT&T, and $69,021.26 in favor of ComCast.   The defendant unsuccessfully appealed the district court's order to the Seventh Circuit Court of Appeals.   The defendant made various representations to the district court regarding an alleged inability to

3

pay.   Smith then issued third-party subpoenas to the defendant and others, and later filed a motion for contempt related to obstruction of discovery. The motion was denied.   Later, Smith successfully moved for reconsideration, and the district court held the defendant in contempt, finding that the defendant "had access to the Monyet funds both before and after he pled insolvency to the court."   Thus, the district court imposed additional sanctions on the defendant and others of $65,263.00 on June 5, 2015.   The district court ordered the defendant and others to pay the award of sanctions by July 15, 2015.

o   January 20, 2015:  The Fourth Judicial District of the State of Minnesota amended a prior judgment and entered judgment against the defendant in the amount of $63,386.52.   The district court pierced the corporate veil as to Alpha Law Firm and held the defendant jointly and severally liable along with Alpha Law Firm and others.   It specifically found that the defendant had intentionally defunded Alpha Law Firm, disregarded the corporate form, given inconsistent testimony to the district court, and failed to provide responsive information throughout the proceedings.   On June 29, 2015, the district court issued a post-judgment discovery order requiring the defendant to show cause as to why he should not be held in contempt for violating the district court's March 5, 2015 order compelling him to turn over financial records for post-judgment discovery.   The district court gave the defendant until July 14, 2015 to provide financial records.   The Minnesota Court of Appeals affirmed the district court's decision on August 17, 2015.

- In 2014, the defendant provided a financial statement to the United States District Court in the Lightspeed matter.   The financial statement identified judgments against the defendant totaling $576,000.00.

- In the spring of 2014, the defendant and his law partner, John Steele, were embroiled in appellate litigation.   On April 2, 2014, Mr. Steele posted a $287,300.00 supersedeas bond in the Lightspeed matter.   Mr. Hansmeier and Ms. Browne claim to have given Mr. Steele between $60,000.00 and $65,000.00 using a portion of the cash hidden in their residence.   The defendant does not have any financial records that document the transfer of cash to Mr. Steele.

- On June 30 and July 2 of 2014, the defendant testified at a debtor's examination conducted by Best & Flanagan.   At the examinations, he testified that:

  o   He had no knowledge of a $75,000.00 transfer from Alpha Law Firm to Monyet on May 3, 2011.

  o   Monyet was "simply an account associated with estate planning" and "the reason, I can't tell you how it operates within the whole estate planning scheme is because I did not set up the estate planning myself that's something that's well beyond my expertize [sic]."

  o   He did not know where the funds transferred to Monyet were located.

4

- He could not get any of the funds transferred to Monyet.

All of that testimony was false.

- On July 9, 2015, Ms. Browne wrote a $15,305.00 check to the defendant's bankruptcy attorney. The check was written on the Associated 1853 account held in Ms. Browne's name.   On July 9, 2015, Ms. Browne deposited $20,000.00 of the hidden cash into the Associated 1853 account to cover the July 8, 2015 check.   On the date of the bankruptcy filing, Ms. Browne held $7,709.64 of the hidden cash in her Associated 1853 account.

- On or about the date of his bankruptcy filing, the defendant and Ms. Browne counted the amount of cash in their possession that they attributed to Monyet.   The defendant and Ms. Browne had at least $20,900.00 in cash in their possession on the day that the defendant filed his bankruptcy petition.

- On July 13, 2015, the defendant filed a chapter 13 petition, related schedules, and a statement of financial affairs.   On schedule A, he claimed that his residence was worth only $885,000.00.   On schedule B, he failed to disclose any cash on hand, or any tax refunds.   He also disclosed $72,000.00 in accounts receivable.   He also failed to list any cash on the statement of financial affairs.   He did not disclose The Mill Trust anywhere in the schedules or statement of financial affairs.   Although he disclosed the existence of Monyet, he did not disclose any transfers to or from Monyet on the statement of financial affairs.   He also failed to disclose that he was the sole manager of Monyet on the statement of financial affairs.   He disclosed only $8,554.00 in funds held by Monyet.   On schedule I, the defendant claimed that Ms. Browne's net monthly income is $4,889.41.   On schedule J, he claimed total household expenses of $9,779.00 per month.   He did not disclose the alleged $60,000.00 payment to John Steele in the statement of financial affairs.   The defendant claimed in the statement of financial affairs that he had paid his bankruptcy attorney $15,000.00 on July 8, 2015.   He failed to disclose any financial statements made in the prior two years on the statement of financial affairs.   He did not disclose the cash inventory that he and Ms. Browne had undertaken on or about the date of his bankruptcy petition on the statement of financial affairs.

- On schedule F, the defendant listed general unsecured claims of $115,334.78.   Of that total, only a $64,180.00 claim owed to Sandipan Chowdhury was scheduled as disputed.

- On August 10, 2015, Mr. Steele wired $65,000.00 and $47,171.75 to the United States District Court for the Southern District of Illinois in connection with the appellate litigation in the Lightspeed matter.

- Between July 27, 2015 and December 10, 2015, Ms. Browne deposited $20,900.00 of the hidden cash in her Associated 1853 account.

- After the defendant filed his chapter 13 petition, he sold Minnesota Vikings tickets. Ms. Browne deposited the proceeds into her Associated 1853 account.   The defendant never informed the chapter 13 trustee of the ticket sales.

- After the defendant filed his chapter 13 petition, he wrote checks to himself from a bank account held in the name of Class Justice, LLC.   The defendant deposited the checks into an Associated Bank account held jointly by the defendant and Ms. Browne.   The funds were then transferred into Ms. Browne's Associated 1853 account.

- Counsel for the chapter 13 trustee convened the meeting of creditors on August 12, 2015.   At the meeting of creditors, the defendant testified as follows:

  o  That the schedules included everything that he owned.

  o  That the schedules included all of his creditors.

  o  That the schedules accurately represented his income and expenses.

  o  That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter.

  o  That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

  All of that testimony was false.

- On September 16, 2015, the defendant and Ms. Browne signed a listing agreement with realtor Ben Ganje of Lakes Sotheby's International Realty to sell their Minneapolis condo for $1.3 million.   The defendant and Ms. Browne signed a form directing Mr. Ganje to withhold the property from the Multiple Listing Service.   The defendant did not consult with the chapter 13 trustee before entering into the agreement, file an application to employ Mr. Ganje, or otherwise inform the Court of the listing agreement.

- The defendant and Ms. Browne rented and moved to a new residence in Woodbury on or about October 5, 2015.   The lease called for rent payments of $1,950.00 per month.   The defendant did not amend schedule J or update his address with the bankruptcy court.

- The Minneapolis condo was listed for sale for $1.3 million, and the defendant signed a purchase agreement to sell the Minneapolis condo for $1.2 million on November 9, 2015.   The defendant did not inform the chapter 13 trustee, the United States Trustee, or the bankruptcy court of the purchase agreement.   His attorney informed Edward Sheu, counsel for some of the defendant's creditors of the purchase agreement on November 11, 2015.   He did not amend schedule A to reflect the value of the Minneapolis condo.

6

- On October 28-29, 2015, Edward Sheu examined the defendant and Ms. Browne pursuant to Fed. R. Bankr. P. 2004.   The defendant testified as follows:

  - That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

  - That all of his living expenses were paid using funds in Ms. Browne's personal bank account.

  - That he has no ownership interest, managerial authority, or control over an entity called Disability Support Alliance.

  All of that testimony was false.

- The defendant received $83,000.00 in accounts receivable associated with Disability Support Alliance during the pendency of his chapter 13 case and dissipated the funds without informing the chapter 13 trustee.   On July 21, 2015, the defendant endorsed a $3,000.00 check written to Disability Support Alliance and deposited the funds into an Associated Bank account held jointly in his name and Ms. Browne's name.   He also dissipated the remaining Monyet funds during the pendency of his chapter 13 case without informing the chapter 13 trustee.

- The defendant and Ms. Browne received a 2014 property tax refund of $3,796.00 on October 2, 2015.

- The chapter 7 trustee convened the meeting of creditors on January 21, 2016.   At the meeting of creditors, the defendant testified as follows:

  - That he listed all of his assets on his chapter 13 bankruptcy schedules.

  - That he listed all of his creditors on his chapter 13 bankruptcy schedules.

  - That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

  - That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter, and that he did not have money to post the bond.

  - That the $150,000.00 withdrawn by Ms. Browne from her TCF account on December 13, 2013 was used for household expenses.

  - That he provided truthful testimony at a debtor's examination on June 30, 2014.

- o That he provided truthful testimony at a debtor's examination on July 2, 2014.

- o That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

All of that testimony was false.

- The following entities are alter egos of the defendant:   The Mill Trust, Monyet, LLC, Alpha Law Firm, Prenda Law, Inc., and Disability Support Alliance.

- The defendant filed a voluntary petition on July 13, 2015.

- The defendant or Alpha Law Firm transferred an unknown amount of funds to The Mill Trust, Monyet, LLC, or Padraigin Browne beginning on December 27, 2010. The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.   The defendant concealed the transfers and the transferred funds until at least one year prior to the filing of his bankruptcy petition.

- The defendant transferred $632,139.00 from Monyet, LLC to third parties beginning on December 27, 2010.   The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.   The defendant concealed the transfers and the transferred funds until at least one year prior to the filing of his bankruptcy petition.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(2)(A).

- The defendant filed a voluntary petition on July 13, 2015.

- After the filing of his petition, the defendant received $83,000.00 in accounts receivable owed to him as of the date of the filing of his petition.   The defendant transferred the funds to various third parties.   The funds were property of the bankruptcy estate.   The defendant concealed the transferred funds from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of his bankruptcy petition.

- After the filing of his petition, the defendant concealed approximately $20,900.00 in cash.   The cash was property of the bankruptcy estate.   The defendant concealed the cash from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of his bankruptcy petition.

- After the filing of his petition, the defendant concealed the true value of his Minneapolis condo from the chapter 13 trustee.   The defendant's interest in the Minneapolis condo was property of the bankruptcy estate.   The defendant concealed the value of his Minneapolis condo with the intent to hinder, delay, or

defraud the chapter 13 trustee.

- After the filing of his petition, the defendant sold Minnesota Vikings tickets.   The proceeds of the ticket sales were property of the bankruptcy estate.   The defendant concealed the sales proceeds with the intent to hinder, delay, or defraud the chapter 13 trustee.

- After the filing of his petition, the defendant concealed his 2014 property tax refund from the chapter 13 trustee and the chapter 7 trustee.   The property tax refund was property of the bankruptcy estate.   The defendant concealed his 2014 property tax refund with the intent to hinder, delay, or defraud the chapter 13 trustee.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(2)(B).

- The defendant failed to keep or preserve recorded information from which his financial condition and business transactions might be ascertained.   Specifically, the defendant failed to keep records that identify the amount of accounts receivable that he collected after he filed his petition, and the disposition of those accounts receivable.   The defendant also failed to keep records evidencing the transfer of $60,000.00 in cash to Mr. Steele in the spring of 2014.   The defendant also kept no records to document the existence of loans made to Class Justice, LLC, or the loans that were allegedly repaid to Mr. Balzebre and Chisholm Properties South Beach.

- The defendant's failure to keep or preserve the records is not justified under all of the circumstances of this case.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(3).

- The defendant knowingly and fraudulently made the following false oaths on documents that he filed with the bankruptcy court:

  - The defendant assigned a value of $885,000.00 to the Minneapolis condo on schedule A.

  - The defendant failed to disclose The Mill Trust on schedule B or the statement of financial affairs.

  - The defendant claimed that Monyet, LLC had only $8,554.00 on schedule B and on the statement of financial affairs.

  - The defendant claimed that he had no cash on hand on schedule B.

  - The defendant failed to disclose a 2014 property tax refund of $3,796,00 on schedule B.

  - The defendant claimed that his monthly expenses on schedule J were

9

$9,779.00.

- o The defendant failed to disclose the $60,000.00 payment to John Steele in the spring of 2014 on the statement of financial affairs.

- o The defendant stated that he made payment of $15,000.00 to Barbara May on July 8, 2015 in the statement of financial affairs.

- o The defendant failed to disclose any property transferred to either The Mill Trust or Monyet, LLC within the ten years prior to filing his petition on the statement of financial affairs.

- o The defendant failed to disclose any property transferred from Monyet, LLC within the two years prior to filing his petition on the statement of financial affairs.

- o The defendant failed to disclose that he was the sole manager of Monyet, LLC on the statement of financial affairs.

- o The defendant failed to disclose a financial statement that he provided in the Lightspeed case on the statement of financial affairs.

- o The defendant failed to disclose an inventory of cash in his home that he took on or about the date of filing of his chapter 13 petition on the statement of financial affairs.

- The defendant knowingly and fraudulently made the following false oaths when he testified at the meeting of creditors on August 12, 2015:

- o That the schedules included everything that he owned.

- o That the schedules included all of his creditors.

- o That the schedules accurately represented his income and expenses.

- o That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter.

- o That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

- The defendant knowingly and fraudulently made the following false oaths when he testified at a Rule 2004 examination held on October 28-29, 2015:

- o That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

- o That all of his living expenses were paid using funds in Ms. Browne's personal bank account.

- o That he has no ownership interest, managerial authority, or control over Disability Support Alliance.

- The defendant knowingly and fraudulently made the following false oaths when he testified at the meeting of creditors on January 21, 2016:

  - o That he listed all of his assets on his chapter 13 bankruptcy schedules.

  - o That he listed all of his creditors on his chapter 13 bankruptcy schedules.

  - o That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

  - o That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter, and that he did not have money to post the bond.

  - o That the $150,000.00 withdrawn by Ms. Browne from her TCF account on December 13, 2013 was used for household expenses.

  - o That he provided truthful testimony at a debtor's examination on June 30, 2014.

  - o That he provided truthful testimony at a debtor's examination on July 2, 2014.

  - o That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

- The defendant's false oaths set forth above were material omissions regarding the defendant's property and property of the estate.

- As a result of the defendant's false oaths, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

- The defendant and Ms. Browne had $178,000.00 in cash in their possession in 2014.   The defendant's schedule B indicates that he was not in possession of any cash when he filed his petition.

- The defendant has not provided a satisfactory explanation for the disposition or loss of the $178,000.00.

- As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(5).

11

This concludes my declaration.


Dated:    April 26, 2016                    /e/ Colin Kreuziger
                                            Colin Kreuziger
                                            Trial Attorney

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MINNESOTA**

In Re:

|  |  |
|---|---|
| | **Chapter 7** |
| Paul Hansmeier, | |
| | **Bankruptcy No. 15-42460** |
| Debtor. | |

Daniel M. McDermott, United States Trustee,

|  |  |
|---|---|
| Plaintiff, | **Adv. No. 16-04035** |
| v. | |
| Paul Hansmeier, | |
| Defendant. | |

**UNSWORN CERTIFICATE OF SERVICE**

I, Colin Kreuziger, declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      That I am an employee in the Office of the United States Trustee for the District of Minnesota and am a person of such age and discretion as to be competent to serve papers.

2.      That on April 26, 2016, I served a copy of the attached: Application for Default Judgment, Verification, Unsworn Declaration of Default and Exhibits, Unsworn Declaration of Identification and Exhibit, Unsworn Declaration on the Merits and Amount Due, and proposed Findings of Fact, Conclusions of Law, and Order for Judgment, by placing said copies in a postpaid envelope addressed to the persons, herein after named, at the place and address stated below, which is the last known address, and by depositing said envelope and contents in the United States Mail at Minneapolis, Minnesota.

**Addressees**:

Paul Hansmeier
100 3rd Ave S, Suite 3201
Minneapolis, MN 55401

Paul Hansmeier
3749 Sunbury Alcove
Woodbury, MN 55125

Barbara J. May
2780 Snelling Ave N, Suite 102
Roseville, MN 55113


Dated:   April 26, 2016                    /e/ Colin Kreuziger
                                           Colin Kreuziger
                                           Office of the United States Trustee

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

                                             **Chapter 7**

**Paul Hansmeier,**

                                             **Bankruptcy No. 15-42460**

        **Debtor.**

**Daniel M. McDermott, United States Trustee,**

                     **Plaintiff,**                  **Adv. No. 16-04035**

**v.**

**Paul Hansmeier,**

                     **Defendant.**

## FINDINGS OF FACT, CONCLUSIONS OF LAW,
## AND ORDER FOR JUDGMENT

      The plaintiff's application for default judgment is before the court.   Based on the application and supporting documents, the court makes the following:

### Findings of Fact

1. Plaintiff Daniel M. McDermott is the United States Trustee for Region 12, which covers the Federal Judicial Districts of Iowa (Northern & Southern Districts), Minnesota, North Dakota, and South Dakota.

2. On March 24, 2016, the plaintiff filed a complaint under Fed. R. Bankr. P. 7001(4) seeking denial of the defendant's discharge pursuant to 11 U.S.C. § 727(a)(2)(A)-(B), 727(a)(3), 727(a)(4)(A), and 727(a)(5).

3. Summons was issued on March 24, 2016, by the United States Bankruptcy Court, District of Minnesota, directing the defendant to file an answer with the Court within thirty days after the date the summons was issued.   The plaintiff mailed the complaint and summons

to the defendant and his bankruptcy counsel on March 25, 2016.   To date, the defendant

has not filed an answer to the complaint.   An answer to the complaint was due on April 25,

2016.   *See* Fed. R. Bankr. P. 7012(a).   The defendant is in default.

4.   The defendant is a resident of the State of Minnesota and filed his petition for relief under

chapter 13 of the Bankruptcy Code on July 13, 2015.   The court subsequently converted

the case to chapter 7 on December 3, 2015.   Randall Seaver was appointed as the chapter 7

trustee.   The case is currently pending in the United States Bankruptcy Court for the

District of Minnesota.

### The Mill Trust and Monyet, LLC

5.   The defendant's wife is Padraigin Browne.   On December 28, 2010, prior to his marriage

to Ms. Browne, the defendant created The Mill Trust.   The defendant is the grantor, and

Ms. Browne is the trustee.   The contingent beneficiaries of The Mill Trust are the

defendant's parents, siblings, future spouse, and any future descendants.   The Mill Trust is

irrevocable, and it contains a spendthrift provision.   The Mill Trust also directs the trustee

to distribute the net income and principal of the Trust Estate to or for the benefit of the

beneficiaries.   The defendant retained the right to veto any distribution.   The Mill Trust is

funded exclusively by transfers from the defendant and entities that he holds an interest in.

6.   At approximately the same time as The Mill Trust was created, the defendant incorporated

Monyet, LLC.   Monyet is a single-member Delaware limited liability company.   The

Mill Trust is the sole member of Monyet.   The defendant is the sole manager of Monyet.

The defendant opened a Scottrade brokerage account for Monyet on December 27, 2010.

The defendant was the sole signatory on the account, and he signed a personal guaranty for

the account.

7.   Beginning in May of 2011, the defendant transferred at least $500,000.00 of his funds or

Alpha Law Firm funds to Monyet, LLC.   The defendant owned and controlled Alpha Law

2

Firm.   Between May 2013 and May 2014, the defendant authorized wire transfers totaling $632,139.00 from Monyet's Scottrade account.   The wire transfers included the following:

    a.   July 30, 2013:   $5,000.00 to Ms. Browne, purportedly a "personal transfer."

    b.   September 27, 2013:   $30,000.00 to Ms. Browne, purportedly a "Trust Agreement."

    c.   November 22, 2013:   $175,000.00 to Ms. Browne, purportedly a "Trust Transfer."

    d.   February 7, 2014:   $70,000.00 to Ms. Browne, purportedly a "Trust Transfer."

The funds were transferred to a TCF bank account (account number ending in 3276—"the TCF 3276 account") held in Ms. Browne's name.   Some of the funds were used to pay the defendant's household expenses, including his mortgage payments.   The defendant also made some mortgage payments using funds located in his TCF bank account.

8.   On December 13, 2013, Ms. Browne withdrew $150,000.00 of the transferred funds from the TCF 3276 account.   She took the cash to her and the defendant's residence and hid the cash in a box in a closet.   Between February and March of 2014, Ms. Browne withdrew an additional $28,000.00 in cash from her bank accounts and similarly hid it.   From time to time, Ms. Browne re-deposited some of the hidden cash into the TCF 3276 account and an Associated Bank account (account number ending in 1853—"the Associated 1853 account").   The defendant had access to the hidden cash.

9.   The defendant also authorized a wire transfer of $21,250.00 from Monyet's Scottrade account to Robert Balzebre on December 9, 2013, purportedly to repay a loan.   Similarly, he authorized a wire transfer of $39,231.25 from Monyet's Scottrade account to Chisholm Properties South Beach, Inc. on May 5, 2014, purportedly to repay a loan.   The defendant does not have records that document the existence of the loans.

10. The defendant also authorized wire transfers totaling $115,000.00 from Monyet's

Scottrade account to Class Justice, LLC, between July 26, 2013 and March 19, 2014,

purportedly as loans from Monyet's Scottrade account to Class Justice.   The defendant

does not have records that document the existence of the loans.

### Sanctions Awards and Related Litigation

11. In the meantime, various courts around the country sanctioned the defendant, including the

following:

a. May 6, 2013:   The United States District Court for the Central District of California entered judgment against the defendant and others in the amount of $81,319.72 in favor of John Doe.

b. September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $4,537.50 judgment against the defendant in favor of Godfread Law Firm PC.   Godfread Law Firm assigned the judgment to Best & Flanagan LLP.

c. September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Thompson Hall Santi Cerny & Dooley.   Thompson Hall assigned the judgment to Best & Flanagan LLP.

d. September 23, 2013:   The Fourth Judicial District of the State of Minnesota entered a $12,646.00 judgment against the defendant in favor of Phillip Gainsley. Gainsley assigned the judgment to Best & Flanagan LLP.

e. October 22, 2013:   The United States District Court for the District of Massachusetts entered judgment against the defendant and others in the amount of $64,180.80 in favor of Sandipan Chowdhury.   The district court specifically found that AF Holdings, LLC was an alias of Prenda Law, Inc. and the defendant.

f. November 27, 2013 ("the Lightspeed matter"):   The United States District Court for the Southern District of Illinois entered judgment against the defendant and others in the amount of $72,367.00 in favor of Anthony Smith, $119,637.05 in favor of AT&T, and $69,021.26 in favor of ComCast.   The defendant unsuccessfully appealed the district court's order to the Seventh Circuit Court of Appeals.   The defendant made various representations to the district court regarding an alleged inability to pay.   Smith then issued third-party subpoenas to the defendant and others, and later filed a motion for contempt related to obstruction of discovery.   The motion was denied.   Later, Smith successfully moved for reconsideration, and the district court held the defendant in contempt, finding that the defendant "had access to the Monyet funds both before and after he pled insolvency to the court."   Thus, the district court imposed additional sanctions on the defendant and others of $65,263.00 on June 5, 2015.   The district court ordered the defendant and others to pay the award of sanctions by July 15, 2015.

4

    g. January 20, 2015:   The Fourth Judicial District of the State of Minnesota amended a prior judgment and entered judgment against the defendant in the amount of $63,386.52.   The district court pierced the corporate veil as to Alpha Law Firm and held the defendant jointly and severally liable along with Alpha Law Firm and others.   It specifically found that the defendant had intentionally defunded Alpha Law Firm, disregarded the corporate form, given inconsistent testimony to the district court, and failed to provide responsive information throughout the proceedings.   On June 29, 2015, the district court issued a post-judgment discovery order requiring the defendant to show cause as to why he should not be held in contempt for violating the district court's March 5, 2015 order compelling him to turn over financial records for post-judgment discovery.   The district court gave the defendant until July 14, 2015 to provide financial records.   The Minnesota Court of Appeals affirmed the district court's decision on August 17, 2015.

12. In 2014, the defendant provided a financial statement to the United States District Court in the Lightspeed matter.   The financial statement identified judgments against the defendant totaling $576,000.00.

13. In the spring of 2014, the defendant and his law partner, John Steele, were embroiled in appellate litigation.   On April 2, 2014, Mr. Steele posted a $287,300.00 supersedeas bond in the Lightspeed matter.   Mr. Hansmeier and Ms. Browne claim to have given Mr. Steele between $60,000.00 and $65,000.00 using a portion of the cash hidden in their residence. The defendant does not have any financial records that document the transfer of cash to Mr. Steele.

14. On June 30 and July 2 of 2014, the defendant testified at a debtor's examination conducted by Best & Flanagan.   At the examinations, he testified that:

    a. He had no knowledge of a $75,000.00 transfer from Alpha Law Firm to Monyet on May 3, 2011.

    b. Monyet was "simply an account associated with estate planning" and "the reason, I can't tell you how it operates within the whole estate planning scheme is because I did not set up the estate planning myself that's something that's well beyond my expertize [sic]."

  c.  He did not know where the funds transferred to Monyet were located.

  d.  He could not get any of the funds transferred to Monyet.

All of that testimony was false.

### Fraudulent Bankruptcy Planning and Filing

15. On July 9, 2015, Ms. Browne wrote a $15,305.00 check to the defendant's bankruptcy

    attorney. The check was written on the Associated 1853 account held in Ms. Browne's

    name.   On July 9, 2015, Ms. Browne deposited $20,000.00 of the hidden cash into the

    Associated 1853 account to cover the July 8, 2015 check.   On the date of the bankruptcy

    filing, Ms. Browne held $7,709.64 of the hidden cash in her Associated 1853 account.

16. On or about the date of his bankruptcy filing, the defendant and Ms. Browne counted the

    amount of cash in their possession that they attributed to Monyet.   The defendant and Ms.

    Browne had at least $20,900.00 in cash in their possession on the day that the defendant

    filed his bankruptcy petition.

17. On July 13, 2015, the defendant filed a chapter 13 petition, related schedules, and a

    statement of financial affairs.   On schedule A, he claimed that his residence was worth

    only $885,000.00.   On schedule B, he failed to disclose any cash on hand, or any tax

    refunds.   He also disclosed $72,000.00 in accounts receivable.   He also failed to list any

    cash on the statement of financial affairs.   He did not disclose The Mill Trust anywhere in

    the schedules or statement of financial affairs.   Although he disclosed the existence of

    Monyet, he did not disclose any transfers to or from Monyet on the statement of financial

    affairs.   He also failed to disclose that he was the sole manager of Monyet on the statement

    of financial affairs.   He disclosed only $8,554.00 in funds held by Monyet.   On schedule

    I, the defendant claimed that Ms. Browne's net monthly income is $4,889.41.   On

    schedule J, he claimed total household expenses of $9,779.00 per month.   He did not

    disclose the alleged $60,000.00 payment to John Steele in the statement of financial affairs.

6

The defendant claimed in the statement of financial affairs that he had paid his bankruptcy attorney $15,000.00 on July 8, 2015.   He failed to disclose any financial statements made in the prior two years on the statement of financial affairs.   He did not disclose the cash inventory that he and Ms. Browne had undertaken on or about the date of his bankruptcy petition on the statement of financial affairs.

18. On schedule F, the defendant listed general unsecured claims of $115,334.78.   Of that total, only a $64,180.00 claim owed to Sandipan Chowdhury was scheduled as disputed.

### Post-Petition Fraud

19. On August 10, 2015, Mr. Steele wired $65,000.00 and $47,171.75 to the United States District Court for the Southern District of Illinois in connection with the appellate litigation in the Lightspeed matter.

20. Between July 27, 2015 and December 10, 2015, Ms. Browne deposited $20,900.00 of the hidden cash in her Associated 1853 account.

21. After the defendant filed his chapter 13 petition, he sold Minnesota Vikings tickets.   Ms. Browne deposited the proceeds into her Associated 1853 account.   The defendant never informed the chapter 13 trustee of the ticket sales.

22. After the defendant filed his chapter 13 petition, he wrote checks to himself from a bank account held in the name of Class Justice, LLC.   The defendant deposited the checks into an Associated Bank account held jointly by the defendant and Ms. Browne.   The funds were then transferred into Ms. Browne's Associated 1853 account.

23. Counsel for the chapter 13 trustee convened the meeting of creditors on August 12, 2015. At the meeting of creditors, the defendant testified as follows:

    a.   That the schedules included everything that he owned.

    b.   That the schedules included all of his creditors.

    c.   That the schedules accurately represented his income and expenses.

7

d. That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter.

e. That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

All of that testimony was false.

24. On September 16, 2015, the defendant and Ms. Browne signed a listing agreement with realtor Ben Ganje of Lakes Sotheby's International Realty to sell their Minneapolis condo for $1.3 million.   The defendant and Ms. Browne signed a form directing Mr. Ganje to withhold the property from the Multiple Listing Service.   The defendant did not consult with the chapter 13 trustee before entering into the agreement, file an application to employ Mr. Ganje, or otherwise inform the Court of the listing agreement.

25. The defendant and Ms. Browne rented and moved to a new residence in Woodbury on or about October 5, 2015.   The lease called for rent payments of $1,950.00 per month.   The defendant did not amend schedule J or update his address with the bankruptcy court.

26. The Minneapolis condo was listed for sale for $1.3 million, and the defendant signed a purchase agreement to sell the Minneapolis condo for $1.2 million on November 9, 2015. The defendant did not inform the chapter 13 trustee, the United States Trustee, or the bankruptcy court of the purchase agreement.   His attorney informed Edward Sheu, counsel for some of the defendant's creditors of the purchase agreement on November 11, 2015.   He did not amend schedule A to reflect the value of the Minneapolis condo.

27. On October 28-29, 2015, Edward Sheu examined the defendant and Ms. Browne pursuant to Fed. R. Bankr. P. 2004.   The defendant testified as follows:

a. That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

8

    b.   That all of his living expenses were paid using funds in Ms. Browne's personal

        bank account.

    c.   That he has no ownership interest, managerial authority, or control over an entity

        called Disability Support Alliance.

All of that testimony was false.

28.  The defendant received $83,000.00 in accounts receivable associated with Disability

Support Alliance during the pendency of his chapter 13 case and dissipated the funds

without informing the chapter 13 trustee.   On July 21, 2015, the defendant endorsed a

$3,000.00 check written to Disability Support Alliance and deposited the funds into an

Associated Bank account held jointly in his name and Ms. Browne's name.   He also

dissipated the remaining Monyet funds during the pendency of his chapter 13 case without

informing the chapter 13 trustee.

29.  The defendant and Ms. Browne received a 2014 property tax refund of $3,796.00 on

October 2, 2015.

30.  The chapter 7 trustee convened the meeting of creditors on January 21, 2016.   At the

meeting of creditors, the defendant testified as follows:

    a.   That he listed all of his assets on his chapter 13 bankruptcy schedules.

    b.   That he listed all of his creditors on his chapter 13 bankruptcy schedules.

    c.   That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

    d.   That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with

        the United States District Court for the Southern District of Illinois in connection

        with the Lightspeed matter, and that he did not have money to post the bond.

    e.   That the $150,000.00 withdrawn by Ms. Browne from her TCF account on

        December 13, 2013 was used for household expenses.

    f.   That he provided truthful testimony at a debtor's examination on June 30, 2014.

9

g.  That he provided truthful testimony at a debtor's examination on July 2, 2014.

h.  That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

All of that testimony was false.

31. The chapter 7 trustee conducted an examination of Ms. Browne on February 18, 2016 pursuant to Fed. R. Bankr. P. 2004.   Ms. Browne was unable to account for the disposition of the $178,000.00 in hidden cash.   The defendant has not provided an explanation for the disposition of the funds.

**Conclusions of Law**

1.  This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.   This proceeding is a core proceeding.

2.  The United States Trustee has standing to commence this adversary proceeding pursuant to 28 U.S.C. § 586(a) and 11 U.S.C. § 727(a)(2)(A)-(B), 727(a)(3), 727 (a)(4)(A), and 727(a)(5).

3.  The following entities are alter egos of the defendant:   The Mill Trust, Monyet, LLC, Alpha Law Firm, Prenda Law, Inc., and Disability Support Alliance.

4.  The defendant filed a voluntary petition on July 13, 2015.

5.  The defendant or Alpha Law Firm transferred an unknown amount of funds to The Mill Trust, Monyet, LLC, or Padraigin Browne beginning on December 27, 2010.   The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.   The defendant concealed the transfers and the transferred funds until at least one year prior to the filing of his bankruptcy petition.

6.  The defendant transferred $632,139.00 from Monyet, LLC to third parties beginning on December 27, 2010.   The defendant transferred and concealed the funds with the intent to hinder, delay, or defraud creditors.   The defendant concealed the transfers and the

transferred funds until at least one year prior to the filing of his bankruptcy petition.

7. As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(2)(A).

8. After the filing of his petition, the defendant received $83,000.00 in accounts receivable owed to him as of the date of the filing of his petition.   The defendant transferred the funds to various third parties.   The funds were property of the bankruptcy estate.   The defendant concealed the transferred funds from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of his bankruptcy petition.

9. After the filing of his petition, the defendant concealed approximately $20,900.00 in cash. The cash was property of the bankruptcy estate.   The defendant concealed the cash from the chapter 13 trustee and the chapter 7 trustee with the intent to hinder, delay, or defraud the chapter 13 trustee or the chapter 7 trustee after the date of the filing of his bankruptcy petition.

10. After the filing of his petition, the defendant concealed the true value of his Minneapolis condo from the chapter 13 trustee.   The defendant's interest in the Minneapolis condo was property of the bankruptcy estate.   The defendant concealed the value of his Minneapolis condo with the intent to hinder, delay, or defraud the chapter 13 trustee.

11. After the filing of his petition, the defendant sold Minnesota Vikings tickets.   The proceeds of the ticket sales were property of the bankruptcy estate.   The defendant concealed the sales proceeds with the intent to hinder, delay, or defraud the chapter 13 trustee.

12. After the filing of his petition, the defendant concealed his 2014 property tax refund from the chapter 13 trustee and the chapter 7 trustee.   The property tax refund was property of the bankruptcy estate.   The defendant concealed his 2014 property tax refund with the

11

intent to hinder, delay, or defraud the chapter 13 trustee.

13. As a result of the defendant's conduct, plaintiff is entitled to an order denying the

defendant's discharge under 11 U.S.C. § 727(a)(2)(B).

14. The defendant failed to keep or preserve recorded information from which his financial

condition and business transactions might be ascertained.   Specifically, the defendant

failed to keep records that identify the amount of accounts receivable that he collected after

he filed his petition, and the disposition of those accounts receivable.   The defendant also

failed to keep records evidencing the transfer of $60,000.00 in cash to Mr. Steele in the

spring of 2014.   The defendant also kept no records to document the existence of loans

made to Class Justice, LLC, or the loans that were allegedly repaid to Mr. Balzebre and

Chisholm Properties South Beach.

15. The defendant's failure to keep or preserve the records is not justified under all of the

circumstances of this case.

16. As a result of the defendant's conduct, plaintiff is entitled to an order denying the

defendant's discharge under 11 U.S.C. § 727(a)(3).

17. The defendant knowingly and fraudulently made the following false oaths on documents

that he filed with the court:

    a.   The defendant assigned a value of $885,000.00 to the Minneapolis condo on

       schedule A.

    b.   The defendant failed to disclose The Mill Trust on schedule B or the statement of

       financial affairs.

    c.   The defendant claimed that Monyet, LLC had only $8,554.00 on schedule B and on

       the statement of financial affairs.

    d.   The defendant claimed that he had no cash on hand on schedule B.

    e.   The defendant failed to disclose a 2014 property tax refund of $3,796,00 on

12

schedule B.

f.  The defendant claimed that his monthly expenses on schedule J were $9,779.00.

g.  The defendant failed to disclose the $60,000.00 payment to John Steele in the

spring of 2014 on the statement of financial affairs.

h.  The defendant stated that he made payment of $15,000.00 to Barbara May on July

8, 2015 in the statement of financial affairs.

i.  The defendant failed to disclose any property transferred to either The Mill Trust or

Monyet, LLC within the ten years prior to filing his petition on the statement of

financial affairs.

j.  The defendant failed to disclose any property transferred from Monyet, LLC within

the two years prior to filing his petition on the statement of financial affairs.

k.  The defendant failed to disclose that he was the sole manager of Monyet, LLC on

the statement of financial affairs.

l.  The defendant failed to disclose a financial statement that he provided in the

Lightspeed case on the statement of financial affairs.

m.  The defendant failed to disclose an inventory of cash in his home that he took on or

about the date of filing of his chapter 13 petition on the statement of financial

affairs.

18. The defendant knowingly and fraudulently made the following false oaths when he

testified at the meeting of creditors on August 12, 2015:

a.  That the schedules included everything that he owned.

b.  That the schedules included all of his creditors.

c.  That the schedules accurately represented his income and expenses.

d.  That he did not provide Mr. Steele with any of the funds that Mr. Steele deposited

with the United States District Court for the Southern District of Illinois in

13

connection with the Lightspeed matter.

    e. That he did not provide Mr. Steele with a "sizeable amount" of funds in the preceding two years.

19. The defendant knowingly and fraudulently made the following false oaths when he testified at a Rule 2004 examination held on October 28-29, 2015:

    a. That he does not make payments for any of his living expenses, including the mortgage, insurance, taxes, or condo fees associated with the Minneapolis condo.

    b. That all of his living expenses were paid using funds in Ms. Browne's personal bank account.

    c. That he has no ownership interest, managerial authority, or control over Disability Support Alliance.

20. The defendant knowingly and fraudulently made the following false oaths when he testified at the meeting of creditors on January 21, 2016:

    a. That he listed all of his assets on his chapter 13 bankruptcy schedules.

    b. That he listed all of his creditors on his chapter 13 bankruptcy schedules.

    c. That Ms. Browne made all of the mortgage payments for the Minneapolis condo.

    d. That he did not provide Mr. Steele with $65,000.00 that Mr. Steele deposited with the United States District Court for the Southern District of Illinois in connection with the Lightspeed matter, and that he did not have money to post the bond.

    e. That the $150,000.00 withdrawn by Ms. Browne from her TCF account on December 13, 2013 was used for household expenses.

    f. That he provided truthful testimony at a debtor's examination on June 30, 2014.

    g. That he provided truthful testimony at a debtor's examination on July 2, 2014.

    h. That he provided truthful testimony at his Rule 2004 examination on October 29, 2015.

14

21. The defendant's false oaths set forth above were material omissions regarding the defendant's property and property of the estate.

22. As a result of the defendant's false oaths, the plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(4)(A).

23. The defendant and Ms. Browne had $178,000.00 in cash in their possession in 2014. The defendant's schedule B indicates that he was not in possession of any cash when he filed his petition.

24. The defendant has not provided a satisfactory explanation for the disposition or loss of the $178,000.00.

25. As a result of the defendant's conduct, plaintiff is entitled to an order denying the defendant's discharge under 11 U.S.C. § 727(a)(5).

**Order for Judgment**

IT IS ORDERED: The defendant's discharge in BKY 15-42460 is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated:                                    _____
                                          Kathleen H. Sanberg
                                          United States Bankruptcy Judge